Your Honor, this case presents what U.S. v. LeBlanc skirted and what U.S. v. Rudd left unresolved, the case in November of this year. And that is how broad can residency restrictions on certain classes at least... You make a tremendously effective presentation on that in the papers submitted. I mean, you're basically relegating these people to homelessness or living in the desert, as you put it. I'm troubled, though, because that material, if I read this right, was not presented to the district court. Yes, you're right. And, well, some of it was. Well, the research was this effect was not. However, it's what we call legislative facts, and it's not ordinarily the subject of judicial notice. I agree we could take notice of some of this material if we exercised our discretion to do so. My concern is that if it had been presented in the district court, we might not have to because the judge might say, whoa, I didn't realize that what the probation officer was giving me as a standard form was so radical. I'm not going to sign off on this. I appreciate that concern, but at the same time, I don't think it's fair to ignore what has actually been stated now in published cases. I mean, this phenomenon is just not a matter of maps and a matter of studies. You've got a number of state court cases, and I've cited them, where they have noticed that this is what's happened. In other words, it's now in a Westlaw data bank to be argued. My concern is a little different from the one you're making. My concern is not whether you're substantively right or wrong. I think there is much merit to your argument. If I were to look at it as though I were a district judge, my problem is that the district judge is supposed to exercise his discretion, and everything that discretion should be exercised in consideration of ought to be performed when he does it. It's troubling when, from our greater distance from the case, we exercise discretion in the first instance. I understand that. I think your task is not to exercise discretion. I think your task is to determine what the outer bounds are, and I think the issue was certainly before the district. That would be very particularized. I can think of some child molester cases that we've had, and this is not a child molester case, but I can think of some where we'd say, yeah, living in the desert at least two miles from any human habitation would be about right, after he gets out in 60 years. And I can think of others where, gee, it was just two teenagers, and there wasn't even any sex, or a girl sexted. Is that what they call it? I can't remember. Yes, I believe that. He sent an email with a picture of herself naked, and the boy winds up being treated as a sex criminal, and he can't live among civilized people anymore, where it's ridiculous. And it seems like that's very factually specific, and factually specific means it's district court business. Well, I understand that, except that the difference here between direct view and 2000, the original plea agreement allowed him to challenge anything beyond direct view. I want to follow up on what Judge Kleinfeld said, because as I read Blinken's op, we would be reviewing this for substantive reasonableness, which, of course, is a very difficult standard, accounting for, in quotes, the totality of the circumstances presented to the district court. Yes. And that's, of course, the point that Judge Kleinfeld raised. So let's just say hypothetically that at least with respect to the 2000 yards, we think, oh, gosh, you can't live in any place where people are. And if that wasn't presented to the district court, how can we review the totality of the circumstances, including that, since it wasn't presented to the district court? Well, after I would say this, that at a certain point, the totality of the circumstance is going to require consideration of a general knowledge bank that's developing in the case law. I mean, if, for example. But don't you still have to add to that general knowledge bank, as you indicate, and you do that by presenting the relevant evidence to the court below? Well, it would be ideal if you did that. My concern or my response to that is that when this issue comes up, this is not specialty information. This is information that anybody. But you're asking us to sit like a district court. You're asking us to find facts specific to this matter. If we agreed with your general concept from our general knowledge bank, wouldn't the appropriate thing be to do to send it back to the district court, indicating that we don't have enough information to decide this 2,000-foot issue because it wasn't really presented to the district court? We can uphold the lifetime thing, for example, because Daniel says that's okay. But we could send it back on the 2,000-foot issue and let the district court take a look at the information you provided, as Judge Kleinfeld suggested. Perhaps the district court would say, oh, that's not appropriate in this case. And before you answer that, I want to add to, if I may, I want to add to Judge Smith's question, because what might happen once you provide this information to the district court is the district court might put the question to you as to whether you're asking him or her to invalidate California Penal Code 3003.5b, which requires that 2,000-foot limitation. Well, my response to that here, as opposed to either in a district court or before the California courts on habeas, is that, yeah, I mean, I wouldn't be asking a district court to do that. I would also be concerned. Why would you have to? I mean, the federal judge could say you can't be within 100 yards of a school or place where kids hang out. And California could say 2,000 feet. And there's a provision in the standard conditions that says you must comply with all federal, state, and local laws. So the compliance with the state laws would mean you have to follow California law. And if California law is 2,000 feet, you have to be 2,000 feet away. If California changes the law to 10,000 feet or 100 feet, whatever it is, that's California law. It's under the California Constitution, for example, that a 2,000-foot limitation on independent safety. Right, the Supreme Court could throw it out, whatever California law is. I sense that that's one of the issues, is that. . . I can't imagine a federal judge saying, you generally have to follow federal, state, and local law, but not this particular state law. I agree. I think what you're getting at is dual sovereignty, federalism, and comedy, which is the state of California, within the bounds of the Constitution, is free to impose its own restrictions on Mr. Collins because of his conviction. They have written their, for example, sex registration statute 290, and they've chopped it up now, 290.0-something, of a penal code where they say a federal. . . Let me ask you about something else because we're getting kind of adrift here. Yeah. The district court has not been invited to read a lot of the package of material you submitted to us. My question is, what do you have in the record that was before the district court that would justify vacating the sentence and remanding for resentencing, at which time you, of course, would produce the same package for the district judge? What do you have in the record as it stands? What's in the record before the district court is more the more evidence, first of all, from an expert that Mr. Collins is not a danger? Okay, you've got an expert report that this guy is not such a danger. What else? Also, some, not every article, but some of the research that shows a class of offenders, Internet-only offenders, are less dangerous as sex offenders. He cited a number of the, I think they were a little older part of portions. . . You know, I didn't go through all of them. There was some dramatic evidence that came out of Czechoslovakia because of its peculiar history on this. Are there Czechoslovakia research articles in here? I don't know whether the Czech articles. . . I have, I think, seen Swiss. . . Czechoslovakia, they had strict prohibition of all pornography under the communists, and then when they got rid of communism, all pornography was permitted, including child pornography. Yeah, I don't. . . Subsequently, child pornography was prohibited, but any kind of adult pornography was permitted, and they traced how much sex crime there is and how much sex crime against children there is under each of the three regimes with no cultural difference. Same people. I see, Your Honor. I did not see a Czech study. I have seen Swiss. . . I don't recall seeing that one. No, I did not recall seeing that reference. Mr. Hanna, I have one other question about the California Penal Code. Are you asking us. . . Let's come back to what you're asking of us in relief. Are you asking us to invalidate the California Penal Code, because it seems to me that if we send it back, the district court judge could say, well, as Judge Kleinfeld pointed out, it has to comply with federal, state, and local laws, and so state laws require that they not be within 2,000 feet of any public or private school or park where children regularly gather. So I'm faced with essentially the same dilemma. I would ask you. . . I'm going to answer it and be a little complicated. I am going to say that I would like from this court an acknowledgement that this condition and, in all probability, Penal Code Section 3003.5 is unconstitutional. On the other hand, I'm aware that because it's a state custody issue, essentially, that there may be another round of litigation in the California courts, but I think this court can certainly write an opinion that says this condition or this statute violates the Constitution. Let me just ask you something here. Let me share this. Your client was convicted in federal court, right? Yes. Okay, and I'm looking at the California statute here. This is the California Penal Code Section 3003.5a, and it says, notwithstanding any other provision of law, when a person is released on parole after having served a term of imprisonment in state prison for any offense for which registration is required pursuant to 290, that person may not. And it goes on and talks about the 2,000 feet. It says nothing about federal prison. Does that have anything to do with this issue? Does it have any impact? Do we need to rule on anything related to that statute? Well, if that's how the statute reads. It is. I'm looking at it right here. Okay. Then. Through the miracle of the Internet. Yeah, you know how to get on it here. We do. Yes, and I understand that. But, well, then what would happen in that instance is that the statute would exclude Mr. Collins, and then we're back to the question of the federal restriction. We'd obviously need to just double-check this, but that certainly appears to be the limitation. Okay. I think that's pretty much all I've got. Is there any other part of the case that the court has questions about? Okay. It doesn't appear that we do. And thank you for your argument. We'll now hear from the government, from our good friend, Mr. Jean-Claude Andre. Thank you, Judge Smith. Jean-Claude Andre again on behalf of the United States. Judge Kleinfeld, your questions went precisely to where I was going to argue this case. There was one paragraph, if you look at excerpts of record, page 25, one paragraph of advocacy on behalf of the defense about this residency restriction, in very general terms. Now, I will concede that that is sufficient to preserve the objection, certainly under the Rudd panel's analysis, where I argued that case, and I think there was even less of a preservation of the issue, and this Court nonetheless found it preserved. But I think in this context, because we are reviewing, as Judge Smith in particular you pointed out, for abuse of discretion, which, of course, requires the district court's decision to be illogical, implausible, or without support in the record, we can't totally take some of the plein air flavor out of the analysis. Let me tell you what bothers me most about the sentence so you can really address what's on my mind. The guy has dirty pictures of children, which is a crime. But he's never molested any children. He had sex with a girl in the Philippines who was 15 or 16. He didn't pick her up on a child sex chat line or anything like that. It looked like she wanted a green card marriage to get into the United States, and he looked like a possible partner for that. And a 15- or 16-year-old is not a child. They may or may not be underage, depending on the jurisdiction, but they're not children. They're not prepubescent. In view of the fact that he has no child molesting, even though he looks at dirty pictures of children, and his sexual conduct is with someone who's not a child, why is it reasonable to sentence him like a child molester? Essentially, you can't live in civilized society restriction. A number of responses. The government disagrees that the Filipino woman or girl with whom the defendant went to the Philippines and stayed in a hotel with for two weeks was not a child. I mean, she was 15. It's statutory rape. He was in his 40s. Well, for all the literature and much of the law on child pornography and child molesting is about prepubescent as opposed to under 14 or under 16 or under 18 or under 21, depending on what the local age of consent is. I think the law certainly recognizes gradations, but I'm not aware of any jurisdiction that would not recognize that a 40-year-old man having sex with a 15-year-old girl is not statutory rape. And, in fact, one of the things that we gave away in our plea agreement in this case was the ability to prosecute the defendant. I think in California, the age is 18 if there's a four-year age difference. But if there's not a four-year age difference, then it's not 18. Is that correct? I can't remember exactly. I think the theme is correct insofar as if it's, let's say. And I think there are a lot of states where girls can marry at 14 with parental consent, which is what this Filipino girl seemed to be looking to do. It's unclear. I mean, the defendant. Looked like he had parental consent in the Philippines. Well, the defendant picked her up in a chat room, and then the. . . Chat rooms and chat rooms. Like there are all these ones that are advertised on TV for widows and widowers and divorcees to meet people for companionship, sex, and marriage. Just saying he met her in a chat room doesn't do much for me. Well, insofar as whether, you know, there was potentially parental consent here, I mean, the record is clear that the uncle said, you know, you better not be coming over here to have sex with her. But regardless, I think the fact that the defendant does have an interest in much younger women or underage girls, however you want to define it, does add a plus factor to what would otherwise just be a minor on child pornography case. But even in a minor on child pornography case, we think that this restriction is certainly within a district court's broad discretion when you look at the total mix of information before the court at the time, which in this case was not much from the defendant. There was the LeBlanc, which I realize is an unpublished decision, but an unpublished decision of this court saying it's okay. You have other circuits upholding various other variants of residency restrictions. One of the things about unpublished decisions, one of the reasons they're not citable is we don't know the facts, and it could very well be that if you read the PSR, the pre-sentence report in LeBlanc, you'd find out that this is a guy who should not be allowed to live in civilized society. I happen to have worked on that case, too, Your Honor. It was also out of our district. Oh, was he?  It was a minor on child pornography case. I mean, I don't know. But, Rick, I take your point. But since then we've also had the Grigsby decision, which was also handled when I handled Rudd and Torres-Figueroa. We had residency restriction here at this court a couple months ago. Did the district court give the – I know he was not required to, but did he give you enough information to ascertain whether he made his decision based on California Penal Code 3003.5 or whether there were independent facts which led him to the 2,000-foot residency? The district court gave us a disjunctive reasoning. He did say that he wanted to impose this first to match up with 3003.5, and then secondarily that even if 3003.5 – Did you say he did or he did not? He did. He did. So if we find that the district court erred because this residency requirement is improper, do we have to also invalidate the penal code, or could we do as I think Judge Smith has suggested, maybe distinguish it based on the fact that it pertains to State court sentences and not to Federal sentences? I think this Court should not and functionally, at least in this case, cannot touch the California Penal Code. I mean, perhaps if we're – I don't know. Touching it. This is not a preliminary injunction case brought in Federal court challenging the validity of that California law. The only time you can declare a State law unconstitutional is when it comes up in the context of that extraordinary remedy? That would seem to be the most natural fit, but the district court here – Mr. Andre, you do such a wonderful job of answering questions. You didn't answer that one. Should I pose it again? No other example comes to my mind at the moment. That would seem to be the most natural fit. I'd like to follow up on Judge Marbley's question. I – since he relied on the State statute, which at least at first glance appears not to apply, I also find here that there's a case called N. Ray Kwok Thai Pham, which is at 124 Cal Reporter 3rd, 697, in which all of the arguments that the defendant raises here about that this is going to basically banish him were raised and rejected by the California Courts of Appeal and review was denied on habeas. That's correct. On that very point. So the reality is the issue's been raised, it's been joined. If we as a court are concerned about the 2,000-foot issue, both in terms of whether the statute applies at all, and even if it did apply, I assume we would have to take into account that he knew of this case that I just mentioned, would we still not need to send this back to the district court for a new look in order to have the totality of the circumstances? Or are we just – are we stuck with what he had at that time if he construed the law incorrectly so that it doesn't apply at all? Then we would just look at it from a straight substantive reasonableness issue – basis, rather. If I could, I guess, answer the last part of your question first and then move back. I do think that this Court should just look at it as the Court ordinarily would review any sentencing component for substantive reasonableness based on the current record. And based on that record, the district court's decision was not illogical and plausible without support. I don't see any reason to vacate and have it due over just so that the defendant's – Just strike the 2,000-foot? No, no. I mean, leave it as is because what the defendant proffered to the district court shouldn't have come to the district court. Wait a minute. You lost me on that one. If I understood you correctly, the district court relied on the state statute, 3003.5, in order to impose the 2,000-foot limitation. I read the statute here to you, at least at first glance. It appears it does not apply here. It does apply. It's a state prison. It does or does not? It does apply. It does. Why is that? That's because of the operation of California Penal Code 290.5, which then says that the residency restriction in 3003.5 is applicable to any sex offender convicted under state or federal, perhaps I don't want to speak, local law. And what's that code section again? California Penal Code 290.5. Okay, all right. So what you're saying is that the limitation in 3003.5 to state prison is overridden by 290.5. Correct. And so in that regard, the district court was largely correct in saying, I want to bring this defendant's federal supervision in line with what he's going to have to do anyways. Now, at the same time, I will acknowledge that there are distinctions between the two conditions. So I guess our position would be that to the extent this Court is going to review the condition and roll up its sleeves and get into it, it should be just on the distinctions between the California statute and the federal condition. But again, based on the record that was before the district court, we don't see an abuse of discretion here because the compendium of evidence was not presented and it wasn't organically tested the way it should be before the district court first instance. And I'll point out this, that the defendant is not at all precluded from getting that organic evidentiary development adversarial testing before this condition becomes too onerous. This district court was express in saying you can come back to me and we can revisit your supervised release. Even if the district court hadn't said that, moreover, under Federal Rule of Criminal Procedure 32.1 and 18 U.S.C. 3583, the district court is always free to reconsider. I'm going to turn it over to counsel. Let me ask you something about the judge's determination to impose as restrictive conditions as he did for as long as he did. I was looking through the sentencing transcript for the judge's explanation of why he imposed such broadly restrictive conditions for as long a duration. And I actually didn't find it. What I found was a number of the court's responses to particular issues. For example, the defendant said the picture that he's getting extra adjustments for for being sadomasochistic isn't sadomasochistic, no whips or chains or anything like that. And the judge says, well, I'm treating any sex with an underage person as sadomasochistic. So I saw specific reasons like that. But I didn't see any explanation by the judge of his exercise of discretion for why the restriction should be as long and broad as they were. Is it there? Did I miss it? No. And that's partially because of the way Judge Selma handles his sentences. Well, you know, district judges handle sentencing under supervision. And we have had several cases where we vacated sentences because there was not enough explanation for why the judge exercised discretion as he did. I understand. My point was that it's not in the transcript because of the way he did it, but it is in the record, and I'll take you there in a moment. Okay, show me. If you look at excerpts of record or, sorry, I guess it's CER, confidential excerpts of record, pages 15 and 16. And that is where the judge explains why he's imposing the 2,000-foot restriction. And there also is an explanation in the same area where he talks about the lifetime term. Judge Selma issues the section that's under Mr. Collins did not knowingly distribute child pornography. That's 15 of the confidential excerpts of record. Yes. You see condition 15 on the bottom. There's a little arrow. Collins objects to restriction. Oh, we're looking at a different page. I'm looking at page 15 of the confidential excerpts of record. You must be looking at a different page. It's got what looks to be 18 or 20-point font, number 15 in the bottom center. I'm sorry. Not the excerpt I put together. But in any event, Judge Selma. Here, I'm looking at this thing. It says confidential excerpts of record. Filed under CER. And it says Robert S. Hanna, attorney at law. And it has this wire binding. And it has two numbers at the bottom, a 15 and a 7. The 7 is the page number on the document, and the 15 is the page number of the excerpts. I'm looking at the same thing. The only thing I can think, perhaps, is that the copy that I was served with, the copy I was served with has the cover switched. So it perhaps is in your excerpts of record volume 1, page 15, which has the cover confidential excerpts in my set. We've run out of time. Colleagues may have more questions. I'll simply indicate to you that based on a preliminary review of California Penal Code section 290.5 and 290, it does not appear that what you indicated happens with the earlier statute is correct. It's very quick. I can't say definitively that that is the case, but we'll check it out. Okay. I have language here. No, I see it. It's right there. But we'll check it out. Any other questions by my colleagues? Thank you both for your arguments. We appreciate it very much. The case of United States v. Collins is submitted. I know you're going to miss us, Mr. Andre. I will. Hopefully we'll see you again soon. I have no doubt. Very well. The next case for argument is the City of Buena Ventura v. The Insurance Company of the State of Pennsylvania et al.
judges: Marbley, Kleinfeld, Smith